FILED
99 APR 13 AM 9:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

BRIAN WARD,            )
                       )
    Plaintiff,         )
                       )
vs.                    )   No. CV 96-J-2696-J
                       )
CITY OF JASPER, et al. )
                       )   ENTERED
    Defendants.        )   APR 13 1999

## MEMORANDUM OPINION

This cause comes before this court on Defendants' motion for summary judgment (doc. 23) and Defendants' amended motion for summary judgment (doc. 33). This court has considered said motions, briefs submitted in support of and opposition to said motions, and evidentiary materials filed in support of and in opposition to said motions.

### Undisputed Material Facts

Plaintiff began working for the city of Jasper in October 1984 as a custodian. During his time as a custodian, Plaintiff was briefly transferred to the position of dogcatcher. However, he soon returned to his custodial duties. After eight or nine years as a custodian, Plaintiff had a dispute with the City Clerk and was transferred to the City's Street and Sanitation Department. At the Street and Sanitation Department, Plaintiff was supervised by Ralph Moon. Shortly after arriving at the Street and Sanitation Department, Plaintiff passed the test to become an Operator I. As an Operator

1

I, Plaintiff drove a brush truck, a dump truck, and a bush hog and worked on a garbage truck.

Plaintiff claims that he was not trained on other, more difficult equipment which he must master before he could be promoted to Operator II. Plaintiff and several other employees signed up to take the test for Operator II. Plaintiff contends that the posted testing time was 3:00 p.m. The test was actually given at 9:30 a.m. while Plaintiff was in the field. Defendants had written a letter to Plaintiff notifying him of the date and time of the test. (*See* Plaintiff's deposition at Exhibit 7.) However, Plaintiff contends he never got the letter or any other notification of the 9:30 test time. Because he did not take the test, Plaintiff was ineligible for promotion to Operator II. The other three individuals who took the test, all white males, passed the test and were promoted to Operator II.

By this time the Street Department and the Sanitation Department had begun operating separately. The Street Department was lead by Ralph Moon while Eddie Miller was the superintendent of the Sanitation Department. By Plaintiff's account, Moon yelled at Plaintiff and other employees and treated Plaintiff in other ways that made Plaintiff feel that Moon did not like him. Plaintiff also contends that Miller was hostile toward him and would not allow him access to water and/or restroom facilities at the landfill when Plaintiff was there to dump loads. Plaintiff contends that he reported Miller's alleged behavior to Moon. Sometime after Plaintiff missed the Operator II exam and after Plaintiff reported Miller's alleged behavior, Plaintiff was transferred to the Sanitation

Department. Plaintiff was not asked if he wanted to transfer. While Plaintiff was working at the Sanitation Department, he filed an EEOC complaint based upon his race. After approximately six months at the Sanitation Department, Plaintiff was transferred back to the Street Department. (*See* Affidavit of Thomas R. Moon and Affidavit of Kathy Chambless at Exhibits.)

After Plaintiff returned to the Street Department, Moon questioned Plaintiff about Plaintiff's working two jobs. In addition to working for the City, Plaintiff was also employed part-time with American Freightways in Birmingham, Alabama. Moon asked Plaintiff how he could work two jobs but did not tell Plaintiff to terminate his other employment.

On January 29, 1996, Plaintiff was selected for a random drug test. He had been selected for similar random tests before. Plaintiff's test returned a positive result for marijuana. Plaintiff was notified of his positive result on January 31, 1996 and suspended until a hearing could be held on February 8, 1996. On January 31, 1996, Plaintiff voluntarily submitted to an independent drug test at the office of a local physician. The result of that test was negative for marijuana. At Plaintiff's hearing on February 8, he did not inform those present of the results of his independent drug test even though he knew the results at the time of the meeting. After said hearing, Plaintiff was terminated for testing positive for marijuana and was provided written notice of his right to appeal the decision to the Civil Service Board. (*See* Plaintiff's deposition at Exhibit 5.) Plaintiff

chose not to appeal to the Board. Instead, he filed another EEOC complaint and this lawsuit.

Less than a month after his termination from the City, Plaintiff was a full-time employee of American Freightways where he remains employed until this day. Plaintiff's pay rate at American Freightways is higher than it was at the City.

## Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-323. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the

4

absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.); citing *Anderson*, 47 U.S. at 251-252.

## Analysis

I. Title VII

    *A.* *Timeliness*

Defendant argues that many of the facts which Plaintiff alleges to support his motion are time-barred from consideration based upon 42 U.S.C. §2000e-5(e). That section requires that a Title VIII charge "be filed within one hundred and eighty days after the alleged unlawful employment practice occurred. ..." *Id.* Since Plaintiff has trouble remembering dates for many of the alleged incidents, there is no proof that they occurred within one hundred and eighty days of his first EEOC complaint. At the summary judgment stage, the court must take the facts in the light most favorable to the Plaintiff. Thus, without deciding the issue of timeliness, this court will proceed with the analysis of Plaintiff's Title VII claims as if each incident alleged by Plaintiff was timely filed within the terms of 42 U.S.C. §2000e-5(e).

    *B.* *Proper Parties*

Plaintiff makes his Title VII claims against the City of Jasper, City of Jasper City

6

Council, City of Jasper Personnel Board, City of Jasper Street and Sanitation Department and Ralph Moon in his official capacity. *See* Complaint at ¶¶8-9. Title VII suits are appropriate only against the Plaintiff's employer. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. § 2000e(b). The Street and Sanitation Departments are only **departments** of the City of Jasper. Thus, they are not properly subject to separate liability than that to which the City is subject. If any liability is assessed for actions occurring by or within the Departments of Streets and Sanitation, that liability is properly assessed against the City of Jasper which has been separately named as a Defendant in this action.

Similar analysis is appropriate as to the Title VII claims against Ralph Moon in his official capacity. To the extent that Plaintiff names Moon in his official capacity as a Title VII Defendant, Plaintiff is simply reasserting his claims against the City. Thus, it will be appropriate to analyze Title VII claims against Moon and those against the City as one.

Plaintiff was not employed by either the Jasper City Council or the City of Jasper Personnel Board. Thus, Title VII claims against said entities are inappropriate. Plaintiff's employer, at all times relevant to this lawsuit, was the City of Jasper, Alabama. Thus, Plaintiff's Title VII claims are appropriately addressed as claims against the City of

7

Jasper.

### C. *Analysis*

#### 1. *Failure to Promote*

Plaintiff claims that the City violated Title VII by denying him the opportunity to be promoted. Plaintiff complains that he was not allowed to train on certain equipment necessary for promotion from his position as an Operator I to an Operator II. He also claims that a time-change prevented him from taking an exam necessary for said promotion. "To establish his prima facie case of discriminatory failure to promote, [Plaintiff] must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position and (4) someone outside of the protected group was given the position." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). Plaintiff fails to make this *prima facie* showing. He never offers evidence of element 3 (*i.e.,* that he was qualified for the position of Operator II). It is undisputed that passing the Operator II exam was required for Plaintiff's promotion, and it is undisputed that Plaintiff never took said exam. Rather, Plaintiff complains that Defendant prevented him from obtaining the training and taking the tests necessary to become qualified for said promotion. Such issues are better framed as disparate treatment claims and should be analyzed separately. Because Plaintiff has failed to make the *prima facie* showing of failure to promote, summary judgment is due in Defendants' favor on that portion of Plaintiff's Title VII claim.

### 2. *Disparate Treatment*

Plaintiff alleges a multitude of facts to support his claim that he was disparately treated because of his race. Plaintiff contends that he was not allowed to train on certain equipment necessary for promotion from his position as an Operator I to an Operator II because of his race. He also claims that a time-change prevented him from taking an examination necessary for said promotion. He claims that he "might" not have been notified of the time change because he is black. (*See* Plaintiff's deposition at 129.) Additionally, Plaintiff contends that, despite his seniority, he was prevented from driving new vehicles and was required him to drive "unsafe" ones based upon his race.

Plaintiff also claims that he was treated differently by his supervisors, Ralph Moon and Eddie Miller, because he was black. He claims Moon yelled at him, involuntarily transferred him, and applied different disciplinary standards to him. Plaintiff claims Miller would not allow Plaintiff to use the restroom or have access to water because he was black. Finally, Plaintiff contends that his two-day suspension for allowing a junior employee to drive a truck assigned to Plaintiff was based upon his race. Plaintiff claims that white employees were allowed to commit this same "offense" with impunity.

In order to establish a *prima facie* case of disparate treatment, Plaintiff must demonstrate that he was treated different than similarly situated white employees. *See McCollum v. Bolger,* 794 F.2d 602, 608 (11th Cir. 1986). In addition, a "plaintiff asserting disparate treatment is required to prove discriminatory animus on the part of the

9

defendant." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1520-1521 (11th Cir. 1995) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S. Ct. 1089, 1095; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05, 93 S. Ct. 1817, 1825 (1973)). Plaintiff has failed to meet this test.

Taking all facts in the light most favorable to Plaintiff, Plaintiff was yelled at, not allowed to drive new trucks, and not allowed to train on more sophisticated equipment, involuntarily transferred, and denied access to restroom facilities. However, Plaintiff only "guesses" and "assumes" that these incidents were based upon his race. Throughout his deposition, he was unable to offer any evidence to support his feelings. In fact, Plaintiff just "fe[lt] like that something about it, [Moon] just didn't like me, and he just – that's the way he did. He rode me." (*See* Plaintiff's deposition at 109.) And Plaintiff is completely unable to produce the required evidence of racial animus. While Plaintiff felt that he was treated differently because he was black, he conceded that Moon yelled at white employees. (*See* Plaintiff's deposition at 110 & 158.) Plaintiff relies heavily on the concept of "seniority" as the reason why he should not have been transferred and should have been allowed to drive newer vehicles. However, Plaintiff stated that "[w]hen they transferred me to the Sanitation Department, I *assumed* that that should have been a lower guy with less seniority, which it was a whole lot of guys has less seniority than me." (*See* Plaintiff's deposition at 117-118 & 161-163.) His argument regarding assignment of new vehicles based upon seniority is also flawed as he admitted that he

10

"really didn't know" what the seniority system was based upon in the department. (*See* Plaintiff's deposition at 121.)

Plaintiff's contentions about being refused restroom access by Eddie Miller are not supported by evidence of racial animus either. According to Plaintiff, Miller did not give a reason why said access was refused. (*See* Plaintiff's deposition at 171.) While such action may be reprehensible, it is not illegal unless Plaintiff "prove[s] discriminatory animus on the part of the defendant." *Edwards* at 1520. Plaintiff has not demonstrated that discriminatory animus motivated Miller.

Plaintiff next contends that the test times for the Operator II exam were changed without his having been notified. Taking all facts in the light most favorable to the Plaintiff, he was unaware of the time change. However, Plaintiff again fails to demonstrate discriminatory animus. To the contrary, Plaintiff was unable to rebut Defendant's proffer of a letter <u>addressed to Plaintiff</u> notifying him of the time for the exam. (*See* Plaintiff's deposition at 127-130 & Exhibit 7.) When asked if he thought the time change was racially motivated, Plaintiff replied: "No. I wouldn't say that." (*See* Plaintiff's deposition at 129.) And, when asked if he was contending that Defendants purposely did not give him the letter containing the examination time because of his race, he stated: "I don't know what was their reason. I think that might could be it." (*See* Plaintiff's deposition at 129.) Thus, Plaintiff's own contentions do not even support the claim that he was denied the opportunity to take the Operator II exam based upon his

11

race.

Plaintiff also cannot seriously contend that any limitations on his ability to learn more sophisticated equipment interfered with his advancement within the department. A passing grade on the Operator II test was the criteria for promotion. Plaintiff obviously thought that he had the potential to pass said examination because he signed up to take it and protested strongly when an inadvertent time change caused him to forfeit the opportunity. Thus, any chances that other employees had to drive more sophisticated equipment could not have actually taken away opportunities for Plaintiff's advancement.

Finally, Plaintiff argues that he was suspended from work for allowing a junior worker to drive a truck that he was assigned to drive. However, Plaintiff contends that the truck was not assigned to him and that whites were allowed to carry on this activity with impunity. In order to establish a *prima facie* case of disparate application of disciplinary rules, Plaintiff must prove "either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1988) (citation omitted). When questioned about the incident, Plaintiff had trouble remembering the details. He remembered the other employee as Gene Nix. (*See* Plaintiff's deposition at 153.) However, records for that day show that Plaintiff was assigned a truck with an employee named Spates. (*See*

12

Affidavit of Thomas R. Moon, doc. 27.) Plaintiff contends that, whoever the junior employee, that individual had been given the orders regarding the day's work and, according to custom, Plaintiff assumed that that individual would drive. (*See* Plaintiff's deposition at 145-146.) Thus, Plaintiff does not contend that he did not allow the junior employee to drive. Rather, he argues that white employees with seniority were allowed to have junior employees drive. (*See* Plaintiff's deposition at 148-149.) While Plaintiff has offered evidence that white employees were not punished for allowing junior employees to drive, Plaintiff has not proven that these employees were similarly situated. Plaintiff offers no proof that these events occurred within close temporal proximity to his suspension nor does he contend that they had recently been warned about such behavior. (*See* Plaintiff's deposition at Exhibit 8.) Furthermore, Plaintiff's evidence is insufficient to establish that he was disciplined in a more severe manner than whites. (*See* Plaintiff's deposition at 148-149.) Plaintiff argues that whites were not disciplined for this activity. However, Plaintiff's own first warning had been oral. (*See* Plaintiff's deposition at Exhibit 8.) Thus, whites could have been orally disciplined for first offenses without Plaintiff's knowledge. Furthermore, Plaintiff had been warned about the exact same behavior only a few days earlier. (*See* Plaintiff's deposition at 152, 154 & Exhibit 8.) Plaintiff offers no examples of whites who had been warned about said behavior and continued therein. Indeed, Plaintiff agrees that his employer is "justified in taking some sort of personnel action" against him if "a supervisor gives ... [him] an instruction to do

13

something" and he does not do it. (*See* Plaintiff's deposition at 156.) Thus, Plaintiff has failed to demonstrate that he was disciplined more severely than whites. Plaintiff does not succeed in establishing a *prima facie* case of disparate treatment as to his suspension.

### *3. Retaliation*

Plaintiff contends that he was terminated in retaliation for having expressed opposition to what he viewed as unfair treatment of African-Americans by his employer. "In order to prevail, the plaintiff must first establish a prima facie case by showing (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (citations omitted). Plaintiff did engage in statutorily protected activity by complaining to his supervisor about what he saw as discriminatory treatment and by filing his initial EEOC complaint. Plaintiff was terminated. However, Plaintiff has plainly failed to proffer any evidence that there was a causal connection between the protected activity and his termination.

Taking all facts in the light most favorable to Plaintiff, Plaintiff was the subject of a random drug screen by the City. Plaintiff tested positive for marijuana in said test. When the positive results were returned, Plaintiff was suspended from the City and had a private drug screen performed. Plaintiff did not test positive in the screen he commissioned. Prior to his termination, Plaintiff had a meeting with his supervisor, the mayor and, possibly, a few other City personnel. At the time of said meeting, Plaintiff

14

knew he had tested negative for marijuana in his privately-commissioned test. However, he informed no one during said meeting. With only the positive result in hand, the City terminated Plaintiff for violation of its drug policy.

Plaintiff's brief, evidentiary submission, deposition and pleadings are replete with speculation and innuendo that someone within the City singled him out for the drug test and/or caused the return of a positive result for marijuana. However, there is not one single piece of evidence that supports such accusations. Speculation is not admissible evidence and, therefore, cannot support or refute a motion for summary judgment. Since Plaintiff has failed to demonstrate his prima facie case of retaliation, summary judgment is due in Defendants' favor on that portion of Plaintiff's Title VII claim.

*II.    §1983*

Plaintiff claims that Defendants discriminated against him in violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution and, consequently, in violation of 42 U.S.C. §1983. In order for the City or any of its subdivisions to be liable under §1983, Plaintiff must demonstrate more than "an injury inflicted solely by its employees or agents. Instead, [Plaintiff must show that it was the] ... government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." *Monell v. Department of Soc. Serv. of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-2038 (1978). In

15

this case, Plaintiff would have to demonstrate that the Mayor, the City Council or, potentially, the personnel board had in place a policy or custom which inflicted the alleged constitutional injury upon Plaintiff. Plaintiff has offered no such proof. Once again, Plaintiff offers only conclusory speculation and conjecture that he was treated differently because he was black. Plaintiff argues only that certain individuals did not like him, and those were <u>not</u> individuals whose "edicts or acts may fairly be said to represent official policy" of the City. Thus, summary judgment is due to be granted in favor of the City and all of its departments and subdivisions on the Plaintiff's §1983 claim.

The only remaining Defendant on the §1983 claim is Ralph Moon in his official and individual capacities. Insofar as Plaintiff seeks recovery from Moon in his official capacity, he actually seeks recovery from the City. Thus, said recovery is prohibited. (*See* analysis *supra*.) In his individual capacity, Moon is entitled to qualified immunity. The law of qualified immunity is clear in the 11th Circuit:

> I. <u>Qualified immunity protects government officials performing discretionary functions from civil trials</u> (and the other burdens of litigation, including discovery) <u>and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'</u> ... II. That <u>qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities</u>. ... Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. ... III. <u>For the law to be clearly</u>

16

established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law. ... 'General propositions have little to do with the concept of qualified immunity.' ... 'If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.' ... For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances. IV. Because qualified immunity is a doctrine of practical application to real-life situations, courts judge the acts of defendant government officials against the law and facts at the time defendants acted, not by hindsight, based on later events. ... V. The subjective intent of government actor defendants plays no part in qualified immunity analysis. ... Objective legal reasonableness is the touchstone. VI. A decision on qualified immunity is separate and distinct from the merits of the case . ... Immunity contemplates exemption from liability that would otherwise exist on the merits.

*Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1149-1151 (11th Cir. 1994) (citations omitted) (emphasis added). The Eleventh Circuit has repeatedly "***stressed the importance of resolving immunity questions at the earliest possible stage in litigation.***" *Lassiter* at 1149 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991)) (emphasis added). And the Eleventh Circuit has been abundantly clear that "once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal 'rights' allegedly violated were 'clearly established.'" *Lassiter* at 1150 n.3. (citing *Barts v. Joyner, et al.*, 865 F.2d 1187, 1190 (11th Cir. 1989)). The Eleventh Circuit is also very wary of trial courts which "permit plaintiffs to discharge [this] burden by

17

referring to general rules and to the violation of abstract 'rights.' ... General propositions have little to do with the concept of qualified immunity. ... If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant. ... The line is not to be found in abstractions--to act reasonably, to act with probable cause, and so forth--but in studying how these abstractions have been applied in concrete circumstances." *Lassiter* at 1150 (citations omitted).

Thus, the law regarding qualified immunity in the Eleventh Circuit is abundantly clear. In the instant case, Moon was performing the discretionary function of running the Street Department. Once claims were asserted against him, Moon clearly raised the defense of qualified immunity. At that point, Plaintiff bore "the burden of showing that the federal 'rights' allegedly violated were 'clearly established.'" *Lassiter* at 1150 n.3. (citing *Barts v. Joyner, et al.*, 865 F.2d 1187, 1190 (11th Cir. 1989)). While Plaintiff continues to rely on his subjective perceptions that he was being treated differently, he offers no "bright line" statutory or case law of which Moon should reasonably have been aware which indicates that Moon was violating Plaintiff's constitutional rights. Thus, the Court finds that Plaintiff failed to rebut Moon's assertion of qualified immunity. Plaintiff has failed to show that the "federal 'rights' allegedly violated were 'clearly established.'" *Ibid.* Thus, Moon is entitled to the defense of qualified immunity without further analysis. Summary judgment is due to be granted on Plaintiff's §1983 claims against Moon in his individual capacity.

## Conclusion

For the above-stated reasons;

It is therefore **ORDERED** that Defendants' motion for summary judgment (doc. 23) and amended motion for summary judgment (doc. 33) be and hereby are **GRANTED** in accordance with the separate order this day entered.

**DONE and ORDERED** this the ___12 day of April, 1999.

_____
Inge P. Johnson
United States District Judge